NATIONAL CHEESE PRODUCERS' FEDERATION, Respondent,
vs. J. S. HOFFMAN COMPANY, Appellant.

*October 12—November 7, 1933.*

The cause was submitted for the appellant on the brief of *La Follette, Rogers & Roberts* of Madison and *Levinson, Becker, Gilbert, Peebles & Swiren* of Chicago, and for the respondent on that of *Gilbert, Ela, Heilman & Raeder* of Madison.

ROSENBERRY, C. J. While a consideration of the controversy in this case requires the perusal of a rather large record—730 pages,—the questions presented upon this appeal do not require a complete statement of the facts and we shall therefore state only such facts as are necessary to an understanding of the questions raised and decided.

On May 9, 1930, a contract was entered into between the parties, the material parts of which are as follows:

"*Price.* All cheese delivered under this agreement will be priced as follows:

"*Grinder Wheel Swiss.* 1c per pound over the agreed settlement price for each month's make of Grinder Wheel Swiss.

"*Block Swiss.* 1c per pound over the agreed settlement price for each month's make on all grades delivered.

"*Open grades Wheel Swiss.* 1¼c per pound over the agreed settling price for each month's make, on all grades delivered. . . .

"*Agreed settling price.* To be arrived at for each month's make by personal contact between representatives of the J. S. Hoffman Company and the National Cheese Producers' Federation. The agreed settling price should be in line with the actual prices paid the cheese factories for each month's make, but may occasionally vary slightly. The agreed settling price must be mutually satisfactory."

Deliveries were made under this contract and on May 12, 1931, a contract for certain specified quantities of cheese was entered into between the parties, the material provisions of which are as follows:

"*Price.* All cheese delivered under this agreement will be priced as follows:

"*Standard Wheel Swiss.* 1c per pound over the agreed basic factory settlement price for each month's make of Standard Wheel Swiss.

"*Block Swiss.* 1c per pound over the agreed basic factory settlement price for each month's make on all grades delivered.

"*Open Wheel Swiss.* 1¼c per pound over the agreed basic factory settlement price for each month's make, on all Open Wheel Swiss delivered.

"*Determination of basic factory settlement price.* It is understood that the basic or factory price for each month's cheese is to be determined not later than the 25th of the following month.

"The determination of this basic or factory price shall be by negotiation between the J. S. Hoffman Co. and the Na-

tional Cheese Producers' Federation and shall be mutually satisfactory."

It is the contention of the defendant that the price provisions of the 1930 and 1931 contracts are ambiguous and therefore to be construed by the court; that the term "agreed settling price" in the 1930 contract meant that price to be paid under the contract should be in line with actual price paid the member cheese factories by the plaintiff, and in the 1931 contract the term "determination of basic factory settlement price" should be construed to mean cheese to be delivered under that contract was to be paid for on the basis of the price paid by the plaintiff to its member factories.

In this connection it should be said that the plaintiff is a co-operative and disposed of the product of approximately 158 member factories during the years 1930 and 1931. The Federation represented between one-half and two-thirds of the cheese factories manufacturing so-called foreign type of cheese in the country. The defendant was a dealer not only in foreign type of cheese but in other types and was purchasing from the plaintiff for the purpose of resale to its customers. The plaintiff claims that under the clause headed "Agreed settling price" in the contract of 1930, and under the clause headed "Determination of basic factory settlement price" of the contract of 1931, the plaintiff and defendant were to determine the price to be paid by negotiation.

The trial court found, and that finding is not drawn in question, that the parties by negotiation mutually agreed upon the prices to be paid for all the cheese delivered of the months of make prior to August, 1931; that thereafter the parties failed to negotiate and agree upon a price. No controversy is presented here with reference to deliveries of the month of make prior to August, 1931, except that there was a failure to deliver a small amount of block cheese for the month of make, July, 1931. The trial court, however, found that the plaintiff delivered and the defendant accepted

other cheese in lieu of the block cheese not delivered. This determination of the trial court we approve and the matter will not be further discussed. In future consideration of the case we shall refer only to the defaults occurring with respect to the months of make after July, 1931.

There is no dispute between the parties as to the quantity and grade of the cheese delivered by the plaintiff and accepted by the defendant for the months of make of August, 1931, and the months subsequent thereto, nor is there any controversy as to the amount of cheese of the kind specified in the contract which plaintiff failed to deliver for the month of make, August, 1931, and months subsequent thereto. As was said by the defendant in its brief, the issues in this action are largely decided by a determination of the meaning of the two written contracts already referred to.

It appears from the evidence that the board of directors of the plaintiff co-operative met once each month and determined what price would be paid by the plaintiff to the member factories for the cheese of the month of make then becoming marketable. For example, the board met on December 15, 1930, at which time the price for the month of make, September, was fixed; it met on January 12, 1931, at which time the price for the month of make, October 1930, was fixed. The rules of the Department of Agriculture and Markets require that cheese of the type covered by this contract must be held from seven to nine weeks after it is made, which accounts for the fact that the price is not fixed until some time during the third month after the month in which it is made. One of the outstanding and undisputed facts is that throughout the season of 1930 and down to and including the make of July, 1931, the parties did reach mutually satisfactory settling price by negotiations. The settling price so reached sometimes was and sometimes was not the same as the price paid by the plaintiff to its member factories. It appears also that the plaintiff co-operative at times withheld certain part of the purchase price from the payment made

by it to its member factories for reasons connected with the administration of its business. It is hardly conceivable that the defendant would have entered into a contract which would have permitted the plaintiff to determine the price which the defendant was to pay for the goods to be delivered under the contract, which would have been the case if the contract were construed as defendant now claims it should be. Whether the proper interpretation to be given to the contract presents a question of law or, as argued by the plaintiff, a question of fact, or is a question of mixed law and fact, is not important in this case and need not be determined. It is true that a person unacquainted with the cheese business, reading the contract without any knowledge of the trade practices and general course of business, would have difficulty in understanding what was meant. The provisions of the contract, however, seem to us to have been plain to the parties thereto, and the practical construction placed upon it by the parties by their conduct is wholly consistent with the usual and ordinary meaning to be attached to the terms used in it. It is considered that the trial court correctly interpreted the contract in the light of surrounding circumstances to mean that the price was to be agreed upon by negotiations between the parties.

This left no contract price fixed for the cheese delivered for the month of make, August, and subsequent months. Upon sufficient evidence the trial court found the reasonable value of the cheese delivered to and accepted by the defendant, which is the amount for which the plaintiff had judgment. This determination of the trial court is approved.

The defendant having agreed upon the price to be paid in settlement of all deliveries for the months of make prior to July, 1931, it has foreclosed itself from making any claim to overpayment on account of such deliveries.

With respect to the claim of the defendant for damages on account of the failure of the plaintiff to deliver all of the cheese called for by the contract, the trial court found

that the defendant had sustained no special damages by reason of such failure. There being no price fixed by negotiation, there was under the terms of the contract no contract price. The language of the contract left the matter of price to be fixed open to future negotiation. The defendant sought to recover damages on the basis of a jobbers' price list as establishing the market price and the price paid by the plaintiff to its member factories as establishing the contract price. This it could not do. We do not need to consider in this case the effect of the failure or refusal of the defendant to open negotiations with respect to the price to be paid for the months of make after July, 1931. Apparently no effort along that line was made. Certainly none was consummated.

The defendant also assigns as error the fact that the trial court permitted the plaintiff to recover interest in accordance with its invoices. The invoices contained the following: "Terms net cash ten days. No discount." The recovery being on *quantum valebant* and not under the contract, the provisions of the contract relating to terms are not applicable. Upon receipt of these invoices the defendant, without raising any question with respect to the price or the terms, made payment of large amounts "on account." These payments so made on account were all made after the controversy between the parties had arisen and obviously for the purpose of disabling the plaintiff from claiming that any particular invoice was settled for, but no objection was made as to terms. Under the circumstances, it is considered that the trial court correctly held that the terms stated in the invoices should govern and interest was computed accordingly.

Plaintiff also in its brief relies upon the law applicable to accounts stated. In the view which we take of the case, it is not necessary to consider that aspect of the case.

*By the Court.*—Judgment affirmed.